# EXHIBIT B

1  Richard L. Wynne (Bar No. 120349)
   richard.wynne@hoganlovells.com
2  Erin N. Brady (Bar No. 215038)
   erin.brady@hoganlovells.com
3  Edward J. McNeilly (Bar No. 314588)
   edward.mcneilly@hoganlovells.com
4  HOGAN LOVELLS US LLP
   1999 Avenue of the Stars, Suite 1400
5  Los Angeles, California 90067
   Telephone: (310) 785-4600
6  Facsimile: (310) 785-4601

7  *Proposed Attorneys for Debtor and Debtor in*
   *Possession*
8

9
                    **UNITED STATES BANKRUPTCY COURT**
10
                    **NORTHERN DISTRICT OF CALIFORNIA**
11
                         **SANTA ROSA DIVISION**
12

13  In re                              Case No.  24-10715 (CN)

14                                      Chapter 11

15  KS MATTSON PARTNERS, LP,            **DECLARATION OF ROBBIN L. ITKIN IN**
                                        **SUPPORT OF DEBTOR'S MOTION FOR**
16          Debtor[1].                  **ORDER AUTHORIZING DESIGNATION OF**
                                        **ROBBIN L.  ITKIN AS RESPONSIBLE**
17                                      **INDIVIDUAL PURSUANT TO B.L.R. 4002-1**

18
                                        Date: TBD
19                                      Time: TBD
                                        Place: (In Person or Via Zoom)
20                                              United States Bankruptcy Court
                                                1300 Clay Street, Courtroom 215
21                                              Oakland, CA 94612
22

23       I, Robbin L. Itkin, declare as follows:

24       1.      I am a restructuring and turnaround professional with over 40 years of wide-ranging
25

26
_____
27  [1] The last four digits of the Debtor's tax identification number are 5060.  The Debtor's mailing address is 3003 Castle
    Road, Sonoma, CA 95476.
28

experience, including professional experience in the areas of corporate turnarounds, workouts and bankruptcies, including, without limitation, advising fiduciaries in bankruptcy cases and in advising debtors, creditors and stakeholders in all aspects of chapter 11 bankruptcies and sale processes, including the sale of real estate assets and alleged Ponzi schemes. I served as lead counsel for one of three committees of investors in the real estate Ponzi scheme case *In re Professional Financial Investors, Inc., et al.*, Case No. 20-30604 (Bankr. N.D. Cal.). Sklar Kirsh LLP ("Sklar Kirsh"), the law firm in which I was then a partner, received the 2022 Turnaround Transaction of the Year Award from the Turnaround Management Association on account of my work, recognizing my unique and collaborative approach to resolving the various competing interests in order to reduce litigation costs and maximize value for the benefit of the victims.

2.      I have also served as a chapter 11 trustee in several complex cases, including Ritter Ranch Development LLC (Case No. 98-25043-GM), which was then the largest chapter 11 case involving undeveloped land in Los Angeles County. I have been a Fellow of the American College of Bankruptcy since 2004. A true and correct copy of my curriculum vitae is attached hereto as **Exhibit 1**.

3.      In addition to the matters listed in my curriculum vitae, I have recently served as or serve as (i) the sole independent manager for a real estate partnership owning a $300 million plus portfolio of over 24 coastal real estate properties including a luxury hotel, duplexes, and multi-family and commercial properties (*In re Mom CA Investco LLC*, et al. (jointly administered cases as Case No. 25-10321 (BLS) pending in the District of Delaware), (ii) an independent manager on a board of managers for a successful online business in its out of court workout with its lender (*In re StarBridge (Ontario) Investment, LLC* (Case No. 6:24-bk-11765 pending in the Central District of California, Riverside Division) ("StarBridge"), and (iii) an independent manager on the board of managers for a highly successful family business.

2

4.      Except as set forth herein, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto. As I have only recently been engaged to be Responsible Individual, I do not have personal knowledge of any of the relevant facts set forth in the background section of the Motion, which are derived from allegations raised in the indictment of Mr. Mattson (*United States of America v. Kenneth W. Mattson*, Case No. CR25-00126 CRB, N.D. Cal.) as well as various pleadings filed in this chapter 11 case and the chapter 11 cases captioned *In re LeFever Mattson, a California Corporation, et al.*, Case No. 24-10545 (CN) (Bankr. N.D. Cal.) (the "LeFever Mattson Chapter 11 Cases"). I am aware that some of those facts may be disputed.

5.      I have not yet conducted my own investigation or made any conclusions as to the issues discussed. In fact, acting as an independent fiduciary to investigate and take appropriate steps for the benefit the Debtor's creditors and investors is why I have been retained and am seeking to be appointed as the Responsible Individual for the Debtor.

6.      I make this declaration (this "Declaration") in support of the *Debtor's Motion for Order Authorizing Appointment of Robbin L. Itkin as Responsible Individual Pursuant to B.L.R. 4002-1* (the "Motion"). Capitalized terms used but not defined in this Declaration shall have the meanings given to such terms in the Motion.

7.      As Responsible Individual, I will perform services, and have the powers and duties, as set forth in the Motion, the Stipulated Order, and the Responsible Individual Agreement, a true and correct copy of which is attached to this Declaration as **Exhibit 2**. In performing such services I will charge the Debtor the rate set forth in the Responsible Individual Agreement.

8.      In light of the recent indictment of the Debtor's Managing Partner, Kenneth Mattson, the serious allegations of fraud made with respect to Mr. Mattson and the Debtor, and as required by the *Stipulated Order for Relief in an Involuntary Case* (Docket No. 131), I am to be

3

appointed as responsible individual.

9.      Although I am seeking to be retained pursuant to section 363 of the Bankruptcy Code, and understand that I am not subject to the "disinterested person" requirements of section 327(a), nonetheless, out of an abundance of caution, I intend to conduct a disinterestedness analysis and disclose any relevant connections to the Court and interested parties. This effort has been complicated, however, by the fact that I have only just received a list of the Debtor's creditors from which to perform a comprehensive conflicts check.

10.     Nonetheless, based on the information that is currently available, and except as otherwise disclosed in the this Declaration, I do not have any connections with the Debtor, its creditors, any other party in interest, their respective attorneys or accountants, the United States Trustee for Region 17, or any person employed by the Office of the United States Trustee. This includes any current or prior connections to the Debtor, Kenneth Mattson or his family members (each of the foregoing in this paragraph, "Potential Parties in Interest"). I will supplement my Declaration as necessary as additional creditors and parties in interest are identified

11.     I have professional and social relationships with lawyers and other professionals involved in this case and the LeFever Mattson Chapter 11 Cases listed as a result of practicing law in the restructuring, bankruptcy and legal industry for over 40 years. Richard L. Wynne, partner of the Debtor's proposed bankruptcy counsel, Hogan Lovells US LLP ("Hogan Lovells"), and I were law partners in the firms of Levene & Eisenberg between 1988 and 1994, Wynne Spiegel Itkin LLP between 1994 and 2001 and Kirkland & Ellis between 2001 and 2008. Erin Brady, also a partner with Hogan Lovells, and I worked together at Kirkland & Ellis from 2001 to 2008.

12.     While unrelated to this case, Keller Benvenutti Kim LLP, which is counsel to the LeFever Mattson Debtors, was counsel to the Debtors in the StarBridge case in which I was retained as independent manager.

4

13.     Other than as listed above, I do not have any connection with any of the Potential Parties in Interest. I did not know the Debtor, Mr. Mattson or any of Mr. Mattson's family members prior to being contacted about serving as the Responsible Individual in this case.

14.     From August 2020 to December 2024, I served as a partner of Sklar Kirsh. Effective January 1, 2025, I became an independent  contractor with Sklar Kirsh to complete a few legal matters while I  pursue my new business serving, not as a lawyer, but as an independent manager or independent director for both distressed and healthy companies. Out of an abundance of caution, I have asked Sklar Kirsh to run a conflict check on the Potential Parties in Interest and will report these results to the Court.

15.     My retention will not be adverse to the Debtor's estate. Should I discover any new relevant facts or relationships bearing on the matters described herein during the period of my retention, I will use reasonable efforts to file promptly a supplemental declaration.

16.     The Debtor also intends to employ Stapleton Group and designate Mike Bergthold of Stapleton Group to serve as Chief Restructuring Officer (CRO), with primary responsibility for managing the Debtor's real estate portfolio, including rent collection, property oversight, asset preservation, analysis and implementation of asset sales and potential financing opportunities. On an interim basis, I wish to have authority to appoint Stapleton to collect rents, manage the property portfolio, and perform basic financial functions, including preparing schedules and statements, and designate Mr. Bergthold as CRO. Stapleton has been serving as the Debtor's financial advisor, is familiar with each of the Debtor's properties, and is at this point the only party positioned to provide me with immediate, on-the-ground support. I also understand that neither the petitioning creditors nor the official committee of unsecured creditors of the LeFever Mattson Debtors oppose Stapleton being employed in this capacity.

5

1    I declare under penalty of perjury of the laws of the United States of America that the

2  foregoing is true and correct.

3        Executed on June 9, 2025

4

5

6

7                                                    Robbin L. Itkin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 1**

**Robbin L Itkin Curriculum Vitae**

# ROBBIN L. ITKIN

**310-738-9561**
**robbin@robbinitkinsolutions.com**



## Board Qualifications

Robbin Itkin is a chamber ranked seasoned attorney and certified mediator who has spent her legal career addressing and resolving business issues facing public and private companies and high profile individuals. She uses her restructuring and problem solving skills to successfully advise on sophisticated and complex issues for boards, executives and portfolio companies on core matters ranging from fiduciary duties, to management and employment matters, acquisitions, dispositions, litigation and financial restructure, and during all stages of business growth, whether healthy or distressed.

Robbin has been appointed by the United States Trustee to serve in the fiduciary role as independent trustee in complex matters involving extensive litigation among multiple parties where an efficient resolution is required (see below). She is the recipient of the 2022 Turnaround Managers' Association Transaction of the Year Award (Large Company) for her role in representing a large group of victims in the Professional Financial Investors, Inc. Ponzi scheme case, where she worked with

January 22, 2025

competing interests to co-formulate a fair plan for distribution to all victims, notwithstanding their investment vehicle. These efforts serve as a model for "resolution not litigation" to maximize value for all stakeholders. Likewise, as counsel to the Ad Hoc Committee of Season Ticket Holders in the Los Angeles Dodgers bankruptcy case, she formulated a resolution with the Office of the United States Trustee to allow for season ticket holders to serve as members of the official creditors' committee, which membership was novel.

Robbin's experience and advice spans all industries, including sports and entertainment, retail, manufacturing, real estate, healthcare, pharma, tech, transportation, commercial lending, food, lifestyle and hospitality. Experienced in serving on not-for-profit boards, including the City of Hope National Medical Center parent board, and its Risk, Audit & Compliance Committee among other committees, as well as private company boards, Robbin will serve as an informed and proactive independent director on private and public company boards, especially in light of the uncertain financial market and the effect that may have on companies and their strategic partners, as well as the uncertainty and impact of protracted litigation.

## Board Member/Fiduciary Experience

Recently served as the retained independent manager for Starbridge (Ontario) Investment, LLC, in its chapter 11 bankruptcy case, in light of the pending litigation and disputes among the LLC members, and to accomplish the sale of the company's primary asset, the Ontario Airport Hotel & Conference Center.

Bikram Yoga - Appointed Trustee of five Bikram Yoga related entities (Bikram Choudhury Yoga Inc, Bikram's Yoga College of India, LP, Bikram, Inc., Yuz, Inc. and International Trading Representative, LLC. Administered all aspects of the businesses, resolved creditor claims and monetized intellectual property, real estate, collector cars and other assets.

Ritter Ranch Development LLC - Appointed Trustee to administer the then largest available developable property in Los Angeles County (over 6,000 acres) and addressed development issues and Mello Roos Bond Financing issues, among other complex real estate and litigation matters. Formulated disposition plan and conducted auction sale of real property assets for over $50M. Hyo Dong Kim –

Appointed Trustee over estate of individual owning and operating dental lab and commercial real estate and monetized estate assets for benefit of creditors.

City of Hope National Medical Center parent board member (1997-2007); board member Emeritus (2007-present); member of Risk, Audit and Compliance Committee (formerly served on nomination and finance committees)

Make-A-Wish Foundation of Greater Los Angeles Board (approximately 2009-2012)

Century City Chamber of Commerce Board (2007-2010, 2012-present)

Los Angeles Women's Leadership Council Board (2017- present)

Credit Abuse Resistance Education (CARE), Los Angeles Chapter Board (2020-present)

Other not-for-profit boards in the restructuring and commercial industries

Robbin has helped numerous companies and high profile individuals navigate the choppy waters of financial distress, many of which were resolved through a bankruptcy process but most of which were resolved out of court and through consensual resolution among stakeholders crafted by Robbin. Robbin is known as the "go to" person when complex matters need to be resolved efficiently and effectively. For example, in her role as the chapter 11 trustee in the Ritter Ranch bankruptcy case, she ended years of complicated and hostile litigation among developers, city officials and creditors regarding the largest developable real property in Los Angeles County at the time, through successful negotiations with every constituency; that resulted in a robust action sale of the real estate, which sale process was designed and conducted by Robbin.

*Risk, Audit and Compliance Committee, Nominating Committee, and Finance Committee experience.

Robbin has served as an equity partner at notable firms such as Kirkland & Ellis, Steptoe & Johnson and DLA Piper.

Education: J.D., University of Southern California Gould School of Law (USC), and a B.A. in Communication Studies from the University of California, Los Angeles, both with honors. Completed certificated director education at the UCLA Anderson Graduate School of Management (Corporate Governance Program 2024).

## Recognitions

*Leading Lawyers in America 2024* Award

*L.A. Times B2B Publishing Business of Law: Trends, Updates & Visionaries -* "Legal Visionary" Award

*Chambers USA,* California Bankruptcy/Restructuring

*Lawdragon 's* Leading U.S. Bankruptcy & Restructuring Lawyers

*2022 Turnaround Managers' Association Transaction Award of the Year (Large Company) for Professional Financial Investors, Inc. chapter 11 bankruptcy case* (Ponzi scheme)

*Los Angeles Business Journal -* Women's Leadership Awards - "Champion of Women" Nominee

*Los Angeles Business Journal -* Business Women Attorneys of Influence

*Los Angeles Magazine,* Top 50 Women Attorneys In Southern California

*Los Angeles Magazine Super Lawyers,* Top I00 Lawyers in Southern California

*The Wall Street Journal*, Best Lawyers in Southern California

*The American Registry,* Top Women Attorneys in Southern California

*Super Lawyers* - Top List Achievement

*Martindale-Hubbell, AV Preeminent Status as a Top-Rated Lawyer*

*Century City Bar Association,* Bankruptcy Lawyer of the Year

*The Legal 500 United States, Finance: Corporate Restructuring* (including bankruptcy)

*Southern California Super lawyers* - Top 50 Women

*Southern California Super Lawyers,* Bankruptcy and Creditor-Debtor Rights Law

*The United States Bankruptcy Court for the Central District of California has recognized Robbin with several mediation awards, including:*

> *Mediator who settled the mediation conference with the most parties in the 2011- 2012 term*
>
> *Mediator who conducted the longest mediation conference in the 2011 -2012 term*
>
> *Mediator who conducted the conference involving the largest amount of money in the 2011-2012 term*

*Top Lawyers* - Corporate Counsel

*Century City Chamber of Commerce*, Women of Achievement Award

*B'nai Zion Foundation*, Women of Accomplishment Award

## Exhibit 2

### Responsible Individual Service Agreement

## RESPONSIBLE INDIVIDUAL SERVICE AGREEMENT

This INDEPENDENT DIRECTOR SERVICE AGREEMENT (this "**Agreement**") is made as of June  9, 2025, by and among KS MATTSON PARTNERS, LP (the "**Company**") and its undersigned general partner  KS Mattson Partners Company, LLC (**"GP" and collectively with the Company, the "Companies"**) on the one hand, and Robbin L. Itkin, an individual, the responsible individual pursuant to Local Bankruptcy Rule 4002-1 of the United States Bankruptcy Court for the Northern District of California  (the **"Responsible Individual"** or "**Independent**"), on the other hand.  Each of the Companies and the Independent individually may be referred to as a "**Party**" and collectively as the "**Parties.**"

## RECITALS

WHEREAS, the Company currently is in an involuntary proceeding under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division and intends to consent to the Chapter 11 case as a Debtor and Debtor in possession ("**Bankruptcy Case").**

WHEREAS, the Company desires to appoint the Independent to serve as the responsible individual of the Company under Local Bankruptcy Rule 4002-1 in order to assist with the facilitation of the Bankruptcy Case.

WHEREAS, the Parties desire to enter into this Agreement to reflect the terms and conditions of the Independent's service as a Responsible Individual  of the Company in connection with the Bankruptcy Case.

NOW, THEREFORE, based on the foregoing premises, and for good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the Parties hereto agree as follows:

1.      <u>Acknowledgement and Acceptance</u>.  The Independent hereby acknowledges and accepts her appointment as the Responsible Individual of the Company, subject to Bankruptcy Court approval and the binding of the insurance required herein.  The Parties agree that the Independent's appointment shall be effective as of the Effective Date (defined below). The Independent agrees to serve as the Responsible Individual of the Company subject to the terms of this Agreement.

2.      <u>Term</u>.  The term of this Agreement (the "**Term**") shall be from the Effective Date until the earliest to occur of (i) the effective date of a plan of reorganization confirmed in connection with the Bankruptcy Case, (ii) the appointment of a chapter 11 trustee or the conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, (iii) any dismissal of the Bankruptcy Case, (iv) the Independent's resignation, and (v) the Independent's death or disability. Nothing contained in this Agreement shall be construed to require the Independent to serve as the Responsible Individual for the

1

Company for any specific term and the Independent Director shall have the right to resign upon five (5) days written notice to the Company. The Responsible Individual shall not be removed except with approval of the Bankruptcy Court. The GP shall not have any management authority regarding the Company and hereby waives any such authority under existing operating agreements.

      3.    <u>Responsibilities of the Independent.</u>

      a)    The Independent shall perform such duties as shall be usual and customary for responsible individuals under Local Rule 4002-1.

      b)    The Companies shall provide authorization, acceptable in form to the Independent, providing for: (i) the appointment of the Independent as the responsible individual for the Company;  (ii) authorization by the Independent of the commencement or settlement of any litigation by or against the Company, or a financial, sale or other restructuring transaction; (iii) all other actions the Independent deems necessary or appropriate to facilitate the interests of the Company, including without limitation the authority of the Independent to engage attorneys and other advisors that the Independent deems necessary or appropriate to assist the Independent in fulfilling the Independent's duties and responsibilities; and (iv) approval of this Agreement and authorization for the officers or managers of the Companies to enter into and perform this Agreement on behalf and in the name of the Company. Day-to-day management of the Company shall be performed by a Chief Restructuring Officer approved by the Company and Bankruptcy Court. The Independent shall not and does not hereby assume responsibility for the day-to-day management of the Company.  Notwithstanding the foregoing, the Independent shall be responsible for the oversight of the Chief Restructuring Officer and any and all actions taken by the Chief Restructuring Officer in connection with the Bankruptcy Case. The Independent shall be the final decisionmaker on behalf of the Company with respect to the Bankruptcy Case and the Independent's decision on such issues(s) shall be the decision of the Company.

      c)    The Independent represents as of the date of this Agreement that, to the best of the Independent knowledge, information, and belief, (i) the Independent has not previously served as legal counsel or other advisor to the Company, (ii) the Independent holds no claim against or equity interest in the Company, and (iii) the Independent is not currently serving as legal counsel or other advisor to any person or entity in connection with a matter in which that person or entity has an adverse interest to the Company.

      4.    <u>Compensation/Expenses.</u>

      a)    In consideration of the Independent Director 's services, the Company shall pay the Independent a fee of $25,000 per month for the Term of this Agreement.  All monthly fees shall be paid on the first (1st) day of each calendar month during the Term of this Agreement as set forth herein (and

*pro rata* for any portion of a month that this Agreement becomes effective. Each monthly payment shall be deemed earned by the Independent on the due date for such payment. The Companies agree that all amounts due to the Independent under this Agreement (including all amounts paid or payable by the Company pursuant to Section 7 below) shall be treated as allowed expenses of administration in the Bankruptcy Case and paid without the need for motions or fee applications. Such payments due to the Independent shall be included in the Company's budgets in the Bankruptcy Case and a reserve shall be established for payment of such carve-out obligations to the Independent, all on terms reasonably satisfactory to Independent.

       b)  The Company shall promptly reimburse the Independent for all reasonable and necessary out-of-pocket expenses and disbursements incurred in carrying out her duties and responsibilities as an independent (including with respect to her duties and responsibilities under this Agreement), including reasonable attorneys' fees and costs and all other amounts under Section 7 herein.

       c)  The Independent will be treated as an independent contractor, and this Agreement shall not create the relationship of employee and employer between the Independent and the Company.

         (i) The Independent will be solely responsible for the payment of all taxes owed by the Independent Director, including any required payments of estimated taxes, with respect to all amounts paid to the Independent under the terms of this Agreement. Except with respect to benefits under any insurance policy (including, without limitation, directors' and officers' insurance, employment practices liability insurance, similar liability insurance and the insurance policies required herein) of the Company, the Independent shall not be entitled to any employment benefits provided to the employees of the Company, including paid leave or retirement benefits.

         (ii) The Company will file all information returns required to be filed with all applicable governmental agencies in connection with all fees and expenses paid to the Independent for each year or portion thereof during the Term. For this purpose, the Independent shall provide a certification of the Independent's social security number to the Company on Internal Revenue Service Form W-9 prior to any payment of fees to the Independent. The Company shall deliver to the Independent no later than the date prescribed by applicable law copies of all information returns filed by the Company with any federal, state or local taxing authority with respect to payments made to the Independent under this Agreement.

         (iii) If any law is enacted after the Effective Date that requires withholding of taxes or other amounts in connection with any payments to the Independent under this Agreement, the Independent will execute any forms or other instruments and take all actions that may be necessary in

order to permit any such required withholding and the Company shall be permitted to withhold such amounts from any payments to the Independent Director .

     5.   <u>Confidential Treatment of Company Confidential Information</u>.

     a)   In consideration of the Company's disclosure to the Independent information that is confidential to the Company  (**"Confidential Information"**), the Independent agrees that this Agreement will apply to all information, in any form whatsoever, disclosed or made available by the Company  or its representatives to the Independent concerning the Company; provided, however, that "Confidential Information" does not include information that (i) is already lawfully known to the Independent at the time of its disclosure to the Independent by the Company , (ii) is or becomes generally available to the public, other than as a result of a breach of the Independent's obligations hereunder, (iii) is lawfully disclosed to the Independent by a third party which is not, to the Independent's knowledge, subject to a confidentiality agreement with the Company, (iv) is obtained by the Independent through subpoena, discovery, or other legal proceedings, (v) the Company  and the Independent agree in writing is not Confidential Information,  (vi) was independently developed by the Independent without use of the Confidential Information, or (vii) is appropriate or required to be disclosed in the Bankruptcy Case in the sole discretion of the Independent. Except as otherwise provided herein, the Independent agrees at all times during the Term through the first anniversary of the expiration of the Term: (i) to hold Confidential Information in strict confidence; (ii) not to disclose Confidential Information to any third parties; and (iii) not to use any Confidential Information for any purpose except for the purpose of the Independent's services to the Company. The Independent may disclose the Confidential Information to its agents, advisors, affiliates and representatives with a bona fide need to know (**"Representatives"**), but only to the extent necessary for the Independent's services to the Company or as necessary to enforce her rights under this Agreement.  The Independent agrees to instruct all such Representatives not to disclose such Confidential Information to third parties without the prior written permission of the Company.  The Independent will, at all times, remain liable under the terms of this Agreement for any unauthorized disclosure or use by any of its Representatives of Confidential Information provided to such Representatives by the Independent.

     6.   <u>Exempted Disclosure</u>. The foregoing restriction on the use and nondisclosure of Confidential Information will not include information which is required or requested to be disclosed pursuant to judicial, regulatory or administrative process or court order, provided, that to the extent permitted by law, rule or regulation and reasonably practicable under the circumstances, the Independent gives the Company prompt notice of such required disclosure so that the Company may, at the Company's sole expense, challenge the same.

4

7.    Indemnification.  In the event that the Independent becomes involved in any capacity in any action, proceeding or investigation brought by or against any person, including partners, interest holders, investors, employees or creditors of the Company or any of their affiliates or any other affiliates, in connection with or as a result of the Independent's past or present service as a Responsible Individual of the Company or otherwise hereunder, the Company will advance to and reimburse the Independent for her reasonable, documented legal and other expenses (including any reasonable retainer of outside counsel of the Independent's choice and the cost of any investigation and preparation) incurred in connection therewith provided, however, that if it is found in a final and non-appealable judgment by a court of competent jurisdiction that any loss, claim, damage or liability of the Independent is the direct result of gross negligence, willful misconduct or actual (not constructive) fraud of the Independent (each, a "**Bad Act**"), the Independent shall repay such portion of the reimbursed amounts that is attributable to legal fees and expenses incurred solely in relation to the Bad Act.  To the fullest extent permitted by applicable law, the Company also will indemnify and hold the Independent harmless against any and all judgments, losses, claims, damages or liabilities to any person in connection with or as a result of the Independent's past or present service as a Responsible Individual of the Company  or otherwise hereunder, except to the extent that any such judgment, loss, claim, damage or liability is found, in a final and non-appealable judgment by a court of competent jurisdiction, to be the direct result of a Bad Act. The right to indemnification and advancement of expenses under this Section 7 shall (x) not be exclusive of any other right that the Independent may have or acquire under any statute, the Company's governing documents, agreements, or insurance policies or otherwise, and (y) survive the termination of this Agreement.

8.    No Duties. To the fullest extent permitted by law, the Independent owes no duties (including fiduciary duties) to the Company, or any partners or interest holders or affiliates of the Company and all such duties are hereby waived and disclaimed by the Company and the partners and interest holders of the Company. The only obligations of the Independent to the Company are those expressly set forth in this Agreement or expressly required of the Independent under any of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the local rules for the United States Bankruptcy Court for the Northern District of California, or orders of the bankruptcy court overseeing the Bankruptcy Case.

9.    Insurance.  At all times during the Term, the Company shall have in force directors and officers liability insurance from an insurance carrier with an A.M. Best rating of (A-) or higher, in an amount and scope reasonable and customary for company  that are engaged in business similar to that of the Company  and are reasonably acceptable to the Independent  (the **"Continuing Policy"**) that includes

"Side A DIC" coverage of not less than $5 million and naming the Independent as the sole insured under the policy and "Side A" coverage insuring directors and officers for claims against such directors and officers by reason of acts or omissions in their respective capacities as directors and officers, as applicable, including, without limitation, liabilities under securities laws or otherwise, whether claimed by a governmental unit or agency or private party, person, or entity.  Such coverage shall be on terms no less favorable than those applicable to other prior directors, officers or members of the board to the extent there is a board.  The "**Effective Date**" of this Agreement shall be the first business day after both (1) such insurance policy is bound **_and_** (2) the Court has entered a final order (acceptable to the Responsible Party in all respects) approving the retention of the Responsible Individual pursuant to the terms of this Agreement.  The Company  shall obtain, maintain and fully pay for irrevocable "tail" insurance policies covering the Independent as an insured person with a claims period of at least six (6) years from the date which the Independent ceases to be a Responsible Individual of the Company, with respect to matters existing or occurring at or prior to such date (the **"Tail Policy"** and collectively, with the Continuing Policy, the **"Insurance Policies"**).  The Company shall not cancel or change the Insurance Policies in any respect that would be averse to the Independent.  The Company shall ensure that the Independent meets the definition of an "Insured Person" under the Insurance Policies. The cost of the Insurance Policies shall be borne solely by the Company.

      10.    <u>Limitation of Liability.</u>  The Independent shall not be liable to the Company, its partners, or any board or officers, or any party asserting claims on behalf of the Company, its partners, or any board or officers, except for direct damages found in a final and non-appealable judgment by a court of competent jurisdiction to be the direct result of a Bad Act.  The Independent shall not be liable for incidental, consequential or special damages, lost profits, lost data, reputational damages, punitive damages, or other similar damages under any circumstances, even if the Independent has been advised of the possibility of such damage.  The Independent's aggregate liability, whether in tort, contract or otherwise, is expressly limited to the amount of fees paid to the Independent for services under this Agreement (or if the claim arises from an amendment to this Agreement, under the applicable amendment) (the **"Liability Cap"**).  Nothing in this Agreement, including the Liability Cap, shall be deemed to limit or exclude the Independent's liability to the extent such claim cannot be capped or limited by applicable law. The Independent may rely on the services and advice of attorneys, accountants and other professional advisors or experts retained by the Company. The Independent shall not be liable to the Company or to any Member or creditor for damages, losses, or costs, any loss of value or any liability arising from such reliance.

6

11.    <u>Independent Contractor</u>.  It is understood and agreed that the Independent is acting as an independent contractor solely in her individual capacity and not as a representative of any law firm, including, without limitation, The Law Offices of Robbin Itkin or Sklar Kirsh LLP ("**Sklar**"). The Independent's service in this regard will not cause the Company, its partners or any board member or director of the Company to become a client of any law firm with which the Independent is affiliated, in any manner whatsoever. In carrying out the duties hereunder, the Independent will not be providing legal advice or charging legal fees on behalf of herself or any law firm or otherwise and her role will be confined to that specifically set forth herein and does not involve providing legal advice or services or the establishment of an attorney-client relationship.  Nothing in this Agreement is intended to confer upon any other person (including partners, employees or creditors of the Company) any rights or remedies hereunder or by reason hereof.

12.    <u>Notices.</u>  All notices, consents, waivers, agreements or other communications hereunder shall be deemed effective or to have been duly given and made only if in writing and if (i) served by personal delivery upon the Party for whom it is intended, (ii) delivered by registered or certified mail, return receipt requested, (iii) delivered by overnight courier or (iv) sent by email transmission, in each case, to such Party at the address set forth below, or such other address as may be designated in writing hereafter, in the same manner, by such Party:

**To the Company:**

**KS MATTSON PARTNERS, LP**

Kenneth W. Mattson
Stacy Mattson
Post Office Box 5490
Vacaville, CA 95696

With a copy, which shall not constitute notice, to:

Fennemore
7800 Rancharrah Parkway
Reno, NV 89511
Attn:  Micheline N. Fairbank

**KS MATTSON COMPANY, LLC**

Kenneth W. Mattson
Stacy Mattson
Post Office Box 5490
Vacaville, CA 95696

4868-1721-5415.1

With a copy, which shall not constitute notice, to:

Fennemore
7800 Rancharrah Parkway
Reno, NV 89511Attn:  Micheline N. Fairbank

**To the Independent:**

Robbin L. Itkin
16350 Ventura Blvd., Suite D-509
Encino, CA 91436
Email: robbin@robbinitkinsolutions.com

13.    <u>Amendments; Waivers</u>.  Any provision of this Agreement may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by the Company and the Independent, or in the case of a waiver, by the Party against whom such waiver is intended to be effective, which writing shall specifically reference this Agreement, specify the provision(s) hereof that it is intended to amend or waive and further specify that it is intended to amend or waive such provision(s).  No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

14.    <u>Assignment; No Third-Party Beneficiaries.</u>  This Agreement is for the benefit of the Parties and their respective successors, legal representatives and permitted assigns. Neither Party may assign, in whole or in part (whether by operation of law or otherwise), this Agreement or any of its rights or obligations under this Agreement without the other Party's prior written approval, and any assignment or delegation without such prior written consent shall be null and void ab initio.  This Agreement shall not confer any benefits, rights or remedies of any nature whatsoever upon any person or entity (including employees or creditors of the Company) other than the Parties and their respective successors and permitted assigns.

15.    <u>Entire Agreement</u>.  This Agreement contains the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior agreements, understandings and arrangements with respect to the subject matter hereof.

16.    <u>Governing Law; Selection of Forum; Submission to Jurisdiction.</u>  This Agreement, and any matter or dispute arising out of or related to this Agreement, shall be construed by, subject to and governed in accordance with the internal laws of the State of California without giving effect to conflict of laws or other principles that may result in the application of laws other than the internal laws of the State of California; provided, however, that while the Bankruptcy Case is pending, the federal bankruptcy

8

laws, rules and regulations shall apply as appropriate. Any legal action or proceeding with respect to this Agreement may be brought in the state and federal courts for the Northern District of California, which is the Bankruptcy Court in which the Bankruptcy Cases are pending and, by execution and delivery of this Agreement, each Party irrevocably consents to the service of process outside the territorial jurisdiction of such courts in any such action or proceeding, although nothing contained in this Agreement shall affect the right to serve process in any other manner permitted by applicable law. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement. Each Party (i) certifies that no representative, agent or attorney of any Party has represented, expressly or otherwise, that such Party would not, in the event of litigation, seek to enforce that foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section 16.

17.    <u>Severability</u>.  The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of the other provisions hereof.  Whenever possible, each provision or portion of any provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (i) a suitable and equitable provision shall be substituted therefor to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (ii) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction; provided, that, if any one or more of the provisions contained in this Agreement shall be determined to be excessively broad as to subject, activity, duration, or geographic scope, it shall be reformed by limiting and reducing it to the minimum extent necessary, so as to be enforceable under applicable law.

18.    <u>Headings.</u>  The titles and subtitles used in this Agreement are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions hereof.

19.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts (including by facsimile or portable document format (.pdf)) for the convenience of the Parties hereto, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. No signature page to this Agreement evidencing a party's execution hereof shall be deemed to be delivered by such Party to any other Party hereto until such delivering Party has received signature pages from all Parties signatory to this Agreement.

4868-1721-5415.1

20.    <u>Survivability</u>.  Notwithstanding anything to the contrary hereto, Sections 5-19 and this Section 20 shall survive the termination of this Agreement.

\*        \*        \*

10

4868-1721-5415.1

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**KS MATTSON PARTNERS, LP**

By: _____

Name:  Kenneth W. Mattson
Title:  Managing Partner

**KS MATTSON COMPANY, LLC**

By: _____

Name: Kenneth W. Mattson
Title: Managing Member

**INDEPENDENT:**

_____

ROBBIN L. ITKIN

9

*[Signature Page to Independent Director Service Agreement]*

4868-1721-5415.1

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.


**KS MATTSON PARTNERS, LP**


By: _____

Name:  Kenneth W. Mattson
Title:  Managing Partner

**KS MATTSON COMPANY, LLC**


By:_____


Name: Kenneth W. Mattson
Title: Managing Member



**INDEPENDENT:**

_____

ROBBIN L. ITKIN




9

*[Signature Page to Independent Director Service Agreement]*

4868-1721-5415.1