CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NIKHIL BHAGAT (CABN 279892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7193
    FAX: (415) 436-6982
    nikhil.bhagat@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH W. MATTSON, <br><br> Defendant. | Case No. 4:25-CR-126 JST (AGT) <br><br> **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE** <br><br> Hearing Date: October 1, 2025 <br> Hearing Time: 10:00 a.m. <br> Before: Hon. Alex G. Tse |

On May 28, 2025, this Court ordered, as a condition of pretrial release, that defendant Kenneth W. Mattson post the property located at 210 La Salle Avenue in Piedmont. On June 11, 2025, the Court reaffirmed that Order. At the latter hearing, Mattson's counsel convinced the Court to temporarily avoid posting the property to allow him to raise a Sixth Amendment argument. He has now raised that argument—twice—before the district court. Twice, the district court rejected it. Now, in a last-ditch effort to avoid complying with the Court's orders *from May*, he asks the Court to modify his conditions.

Because Mattson has not met the threshold showing of demonstrating that there are new facts that were not known to him at the time of the bail hearings, and because his other arguments are unpersuasive, particularly considering the additional information that has come to light since that time, the Court should deny the motion.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. Bail Proceedings

The defendant was arrested pursuant to an arrest warrant and made an initial appearance on May 23, 2025. ECF No. 19 (minute entry). At the hearing, the government moved for the defendant's pretrial detention, citing a risk of flight and an economic danger to the community. *Id.*; ECF No. 6 (written motion for pretrial detention). Following a nearly 90-minute initial appearance, this Court found that the government had met its burden to justify a detention hearing and ordered that one be held. *Id.*

At the Court's direction, Pretrial Services conducted a bail study and made two important findings: (1) the defendant posed a risk of non-appearance based on the nature of the offense and possible significant assets, and (2) the defendant posed a "financial danger to the community." Pretrial Services Report, ECF No. 15 at 10. Pretrial Services concluded that those dangers could be mitigated by a combination of release conditions, including a $4 million bond fully secured by the defendant's multimillion dollar residence in Sonoma, as well as the property and assets of third parties. *Id.* at 11. Notably, according to the Pretrial Services officer, both the defendant and his wife, Stacy Mattson, "declined to discuss" financial resources. *Id.* at 9. Pretrial Services also noted that public records searches reflected the defendant was associated with 64 properties, sales of 23 properties with a total value more than $28,000,000, 11 property loans, and 24 properties possibly owned by the defendant with an assessed value, sale value, or loan amount totaling over $34,000,000. *Id.*

On May 28, 2025, following an approximately five-hour detention hearing at which nine victims spoke about the impact of the defendant's actions on their lives, and after considering the written statements of over 75 victims, this Court adopted pretrial services' view that the defendant posed a risk of flight and a danger to the community, but ultimately concluded that those risks could be mitigated with strict conditions. Those conditions included:

- a $4,000,000 bond partially secured by the posting of a property in Reno, Nevada owned by the defendant's sister-in-law, and 210 La Salle Avenue in Piedmont, each to be posted by June 11, 2025;
- Further security to be provided by the posting of $100,000 in cash from the defendant's sister-in-law and another $100,000 in cash from R.L., a friend of the defendant's;

- The defendant's daughter, son, sister-in-law, and brother-in-law as sureties;
- The defendant's wife Stacy Mattson as a surety and custodian;
- Location restrictions, including a GPS device and restriction to the Northern and Eastern Districts of California.

On June 11, 2025, this Court held a further hearing on conditions of the defendant's release. The defendant submitted a status report in advance, ECF No. 33; the government submitted a brief in opposition, ECF No. 35. In that filing, the government cautioned that "the real purpose" of Mattson's June status report was "to avoid abiding the Court's order to post the Piedmont property—the only property that has substantial equity—to secure the defendant's bond." ECF No. 35 at 2.

At the June 11 hearing, the Court revised the defendant's conditions of release to restrict his movement to the Northern District of California and Solano County, and imposed a condition that the defendant may not solicit investments or act as a fiduciary or manage the finances of others. Superseding Bond, ECF No. 37. During the hearing, the Court issued a superseding bond reflecting these changes but maintaining several of the original conditions, including the requirement to post the La Salle property and the total of $200,000 cash in additional security. *Id.*

Despite the Court's prior order, at the time of the June 11 hearing, the defendant had taken no steps to post the La Salle property with the Clerk of Court, and during the hearing, counsel suggested to the Court that there was an unspecified "potential 6th Amendment violation" that raised an issue with posting it. ECF No. 25. This Court set a briefing schedule and ordered the defendant to file a brief on the issue within two weeks, *see id*. In the interim, the parties stipulated that the "Sixth Amendment issue should properly be brought to the District Judge." ECF Nos. 43 at 2, 45 at 2.

## II.   Litigation Before the District Court

On June 25, 2025, Mattson filed a motion before the district court, which he styled a "motion to modify pre-trial asset restraint." ECF No. 44. In that motion, he sought an order from the district court (1) directing the government to lift its *lis pendens* on 62 Farragut Avenue in Piedmont and 1834–1836 Ocean Front in Del Mar; and (2) asking the district judge to find that requiring him to post 210 La Salle, which this Court had previously found was required to sufficiently assure the defendant's appearance as required and to protect the community, violated his Sixth Amendment right to choice of counsel *See*

ECF No. 44; Ord., ECF No. 68, at 1 ("Defendant Kenneth W. Mattson asks the Court to order the United States to withdraw the notices of lis pendens recorded against properties . . . and to remove the requirement that he be required to post as security for bail a property located at 210 La Salle Avenue, Piedmont, California").

On July 29, 2025, the district court denied the motion and declined to order the government to withdraw its *lis pendens*, finding that Mattson had "not presented the required sufficiently definite, specific, detailed and nonconjectural averments of his inability to pay the counsel of his choosing." ECF No. 68 at 4 (cleaned up). As to 210 La Salle, Judge Tigar declined to grant any relief as to that property either, and directed that "[a]ny requests for modification to the conditions of pretrial release shall be brought to the magistrate judge in the first instance." *Id.* at 6. Judge Tigar also ordered that "if Mattson files a renewed motion regarding 210 La Salle, he should present argument on how a defendant's Sixth Amendment rights intersect with a court's obligation to determine suitable conditions to allow a defendant to be released pending trial." *Id.*

The following day—July 30, 2025—Mattson filed a renewed motion, this time on an emergency basis. ECF No. 70. Despite the district court's explicit direction that any motions for modification of conditions of release should be brought to the magistrate judge in the ordinary course, Mattson again asked the district judge to rule on his request as to 210 La Salle, claiming that "[r]equiring that he post 210 La Salle Avenue would remove that asset as a source of funding for his defense." *Id.* at 4.

Judge Tigar again denied the motion, this time because "Mattson has presented no indication that the bankruptcy court would approve sale of any of the properties even if [the district court] were to conclude that they are untainted assets." ECF No. 78 at 4.

**III.    Litigation Before the Bankruptcy Court**

Following Judge Tigar's second order on August 13, 2025, for the very first time, Mattson sought relief from the bankruptcy court's preservation order and asked for permission to sell certain properties to pay his criminal defense counsel. *In re Kenneth W. Mattson*, No. 24-10714 (Bankr. N.D. Cal.) ("Bankruptcy Case"), ECF No. 123, attached hereto as **Exhibit 1**. As to 210 La Salle, Mattson asked the bankruptcy court to allow an "interlocutory sale" to "preserve value for creditors, victims, and Mr. Mattson." **Exhibit 1** at 4. The other major parties in the bankruptcy proceeding—the LeFever

Mattson debtors, the Responsible Individual who now controls KS Mattson Partners, and the Official Committee of Unsecured Creditors (whose clients include many of the statutory victims in this criminal case), filed a joint opposition. Bankruptcy Case ECF Nos. 133, 134.

Before the bankruptcy court hold could a hearing on the date that Mattson had noticed, Mattson entered Chapter 11 bankruptcy proceedings pursuant to a prior stipulation. Bankruptcy Case ECF No. 127. At Mattson's urging, the bankruptcy court then converted that Chapter 11 case into a Chapter 7 proceeding. Bankruptcy Case ECF No. 147. The upshot is that Mattson is currently in Chapter 7 bankruptcy proceedings.

At the same hearing at which it granted Mattson's request to convert the case to Chapter 7, the bankruptcy court also denied his motion to allow him to spend money from the bankruptcy estate for the benefit of his criminal defense lawyers. *See* ECF No. 147. The bankruptcy judge initially noted that despite allegations in Mattson's filing that the bankruptcy proceedings were generating substantial professional fees for other lawyers, and that properties formerly in Mattson's control were being sold at "severely discounted prices," Mattson had never objected to either of those things in the bankruptcy court. Excerpt of Transcript of Proceedings, Sept. 19, 2025, attached hereto as **Exhibit 2**, at 13:7–14:11.

In denying the motion, the bankruptcy court first noted that the preservation order was no longer in effect, but "[t]he bottom line is no different . . . whether there's a preservation order or not a preservation order[,] [h]owever, since the Mattson bankruptcy estate still needs a bankruptcy court order authorizing real property sales and disbursement of the sales proceeds." *Id.* at 15:5–15:10. Second, it found that Mattson had failed to show "how the Mattson bankruptcy estate would benefit from funding his criminal defense." *Id.* at 15:19–15:21. "And as the bankruptcy case law establishes, funding . . . a Chapter 7 debtor's criminal defense does not benefit the bankruptcy estate." *Id.* at 16:5–16:8.

In sum: the district judge twice denied Mattson's Sixth Amendment motion, the second time on the basis that Mattson should first seek permission from the bankruptcy judge to use the involved property to fund his criminal defense. He sought that permission, but the bankruptcy judge denied it. Mattson's Sixth Amendment litigation, which in June he proffered as the only reason that he should not be required to post 210 La Salle, is over.

# DISCUSSION

**I.   The Defendant Has Not Met the Threshold Showing for Reopening a Detention Hearing.**

"Courts have routinely held that a motion to modify conditions of pretrial release amounts to a motion to reopen the detention hearing." *United States v. Ebonka*, 733 F.Supp.3d 967, 969 (D. Nev. 2024). As such, the Court may only consider the defendant's motion <u>at all</u> if it "finds that information exists that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). "This section is not properly employed as a vehicle for granting a do-over to present evidence that a defendant knew he could have investigated before the detention hearing." *United States v. Bauer*, No. 25-cr-00079-AMO, 2025 WL 2084917, at *2 (N.D. Cal. Jul. 24, 2025) (Westmore, J.) (internal quotation omitted). In other words, the Court can only reach the merits of Mattson's motion to modify the conditions of his release where it finds "truly changed circumstances, something unexpected, or a significant event, and courts have interpreted the requirements of this provision strictly." *Id.* (internal quotation omitted).

Here, the Court held a five-hour detention hearing on May 28 and a subsequent hearing on June 11. After each hearing, it issued conditions of release that required Stacy Mattson to post 210 La Salle Avenue to partially secure the $4 million bond. Nothing in Mattson's motion suggests that any material evidence that was not previously known to him has arisen since the (two) detention hearings in this case. Neither his claim that (a) the Sixth Amendment somehow requires that this Court decline to require him to post a particular property; or his claim that (b) a cherry-picked group of other individuals in this District, who had unique personal circumstances, were released on a different set of conditions, is new, material information as required by the statute. "New counsel and/or a better argument is not new information within the meaning of § 3142(f)." *Bauer*, 2025 WL 2084917, at *2 (cleaned up). Because the defendant has not even attempted to show that there is new, material information that was not known to him at the time of the original detention hearings, the Court should deny the motion.

**II.   The Posting of 210 LaSalle is an Integral Part of the Bond Package that the Court Fashioned to Reasonably Assure the Defendant's Appearance as Required and the Safety of the Community.**

At the detention hearing, the Court considered the pre-bail report, which recommended the imposition of a $4 million bond fully secured by, among other things, the defendant's multimillion-dollar residence in Sonoma. The government suggested that, if the Court was inclined to release the defendant on conditions, it should do so on a $10 million partially secured bond. *See* Gov't Reply to Def.'s Opp. to Gov't Mot. to Detain, ECF No. 17 at 5–6. The Court declined that invitation and determined that the defendant could be released on a $4 million bond subject to strict conditions and partially secured by the following: (1) Stacy Mattson's property at 210 La Salle; (2) the defendant's in-laws' residence in Reno (which the defendant pegs as worth $600,000); (3) $100,000 in cash posted by the defendant's sister-in-law; and (4) $100,000 posted by the defendant's friend, R.L. Despite the Court's orders on May 28 and June 11, which are still in force, the defendant has, to date, only complied with two of those conditions; R.L. has not posted the $100,000 that she promised.[1]

In other words, on a $4 million bond, less than 25 percent is secured. And even posting 210 La Salle, in which there appears to be approximately $1.3 million in equity, would mean that it was only 50 percent secured.[2] That is substantially less than the Pretrial Services recommendation, which called for a $4 million bond secured by $3.9 million. *See* Pretrial Services Report, ECF No. 15, at 11.

Moreover, the unsupported promises of the defendant's other sureties—none of whom own unencumbered assets even approaching the $4 million bond amount and many of whom are judgment-proof, are not sufficient to assure his appearance. And as pretrial services concluded, there are serious concerns here: the defendant's attempts to obstruct justice, the fact that his fraud involved hundreds of millions of dollars over the period of just five years, *see* Indictment ¶ 40, his history of moving money from account to account, and unaccounted for funds all tend to increase the risk that he will not appear as required. *See generally* Gov't Mot. to Detain, ECF No. 6, at 5–11. As the Court previously

---

[1] The defendant claimed at the June 11 hearing, contrary to the representations of pretrial services, that R.L. was misled as to the scope of her obligations as a surety and was therefore no longer willing to put up the cash necessary to secure the defendant's bond. But an equally likely explanation is that R.L., from whom the Court has not heard, conducted further investigation into the allegations against the defendant and decided that he was not a sure bet—that she could not be assured of her money being returned to her. Moreover, the defendant's claims that R.L. "was unable" to post $100,000 are inaccurate. Def. Mot. at 2. She *decided not to* post the money after realizing that it would be in jeopardy.

[2] The defendant claims that 210 La Salle is worth $5 million but tellingly cites to nothing for this bald assertion. The current Zillow listing values the property at approximately $3 million.

GOV'T OPP. TO DEF.'S MOT. TO MODIFY            7
4:25-CR-126 JST (AGT)

concluded, the defendant poses a serious risk of flight and an economic danger to the community; those risks are not sufficiently mitigated by the posting of property worth less than 25 percent of the bond value by a questionable surety. The mere fact that the defendant does not *want* to post the property is insufficient reason to remove it from the bond. "At bottom, the fact that a defendant does not want to be bound by the existing restrictions does not change that those restrictions are necessary." *Ebonka*, 733 F.Supp.3d at 971.

### III. The Defendant's Sixth Amendment Arguments Are Not Properly Before this Court, But Even if They Were, Mattson Cannot Have a Sixth Amendment Claim to the Property of Another.

As an initial matter, Mattson has failed to abide Judge Tigar's instruction that any renewed claim as to 210 La Salle "present argument on how a defendant's Sixth Amendment rights intersect with a court's obligation to determine suitable conditions to allow a defendant to be released pending trial." ECF No. 68 at 6. Rather than meaningfully engage with the Bail Reform Act as he was ordered to do, Mattson simply asserts a generic Constitutional claim, citing to no relevant authority, in the apparent hope that its specter will bully this Court into adopting his position.

But Mattson has now effectively *conceded* that he has no Sixth Amendment claim. After insisting at the bail hearings before this Court (and before the district judge) that he had an ownership interest in 210 La Salle, Mattson now suddenly claims, for the first time, that the property belongs to his wife alone. Assuming that is true, Mattson's Sixth Amendment claim fails on its face. Whatever the complexities of post-*Luis* jurisprudence that have been briefed before the district judge, it is black-letter law that a defendant *cannot* raise a Sixth Amendment claim involving restraints on the property of another. A Sixth Amendment claim is *personal* to the defendant: "Defendant only has a potential Sixth Amendment right to the assets if Defendant owns the assets at issue or has a right of indemnification." *United States v. Feathers*, No. 14-CR-00531, 2016 WL 733518, at *8 (N.D. Cal. Dec. 19, 2016) (Koh, J.). *See also Caplin & Drysdale, Chtd. v. United States*, 491 U.S. 617, 626 (1989) ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice"). If, as Mattson now belatedly claims, 210 La Salle belongs solely and separately to Stacy Mattson, he has no ownership interest in the property and cannot assert a Sixth Amendment based on its restraint.

**IV. Since the Bail Hearings, the Government Has Discovered Additional Evidence of the Defendant's Obstruction of Justice, Including the Involvement of His Custodian and Other Sureties.**

The only material change since the defendant's bail hearings is that the government has discovered *additional* evidence of his misdeeds that cast substantial additional doubt on his veracity and ability to be supervised, as well as the suitability of his custodian and sureties.

First, the government has learned that Mattson and his wife/custodian Stacy anticipated the May 2024 execution of a search warrant at their home. In anticipation of that search warrant execution, Mattson and Stacy began to sell off assets, including personal luxury items and jewelry, with the assistance of SURETY 1, who is the owner of the Reno residence that has been posted. SURETY 1 removed valuables from the Mattsons' home, including a Rolex watch and firearms, in anticipation of the search warrant. SURETY 1 also set up a bank account in SURETY 1's own name for Stacy's use so that Stacy could have money "stashed away" in case the defendant went "away forever" when the FBI came. Instead of depositing the proceeds of the sales of luxury goods into an account in Stacy's name, SURETY 1 deposited them in the secret account. In the ensuing months, SURETY 1 helped Mattson dispose of nearly $3 million in classic cars. *See* Exs. L, K to Declaration of Christoffer Lee in Supp. of U.S. Opp. to Def. Mot., ECF No. 51 (filed under seal). SURETY 1 confirmed the essential facts of the witness accounts. *See* Records of Interviews, attached hereto as **Exhibit 3** (filed under seal). Finally, SURETY 1 does not know what a "surety" is and claims that Pretrial Services "lied" to her. *Id.* SURETY 1 aided Mattson and Stacy in concealing assets from authorities and has told the FBI that she does not understand the scope of her obligations as a surety. It is even more evident now than it was at the time of the bail hearings that posting of SURETY 1's property alone is insufficient to secure the defendant's appearance as required.

Despite refusing to tell Pretrial Services about his financial condition, the defendant submitted two declarations to the district judge. Both of those declarations contained substantial falsehoods and omissions, particularly as to the state of his assets. *See* U.S. Opp. to Def. Mot. at PageID 12, 18–19 (describing Mattson's false omissions in first declaration); U.S. Opp. to Def.'s Second Mot., ECF No. 73, at PageID 18 (describing Mattson's false statements regarding securities and retirement account in second declaration).

GOV'T OPP. TO DEF.'S MOT. TO MODIFY            9
4:25-CR-126 JST (AGT)

1    Mattson's (unsupported) contention that "he has ceased to do any work for the Responsible Party
2 in the KSMP bankruptcy and has been cooperating with all their requests," Mot. at 7, is also false.  Even
3 after the bankruptcy court removed KSMP from Mattson's control, he has been visiting the KSMP
4 properties and making tenants uncomfortable, communicated with tenants about repairs to the
5 properties, collected $4,000 in cash rents that have not been turned over to KSMP's Responsible
6 Individual, and is continuing to hold himself out to be the manager of the properties. *See* **Exhibit 4**
7 (letter from KSMP counsel detailing concerns and response).  KSMP's claim that Mattson pocketed
8 thousands of dollars in rent is consistent with the Pre-Bail report, which reported that at the time of his
9 arrest, Mattson was in possession of $9,000 in cash, which he subsequently claimed came from tenant
10 rents. *See* Def.'s Opp. to Gov't Mot. to Detain, ECF No. 16.

11    Finally, Mattson hid from this Court and the district judge WITNESS-1's ownership interest in
12 210 La Salle and only acknowledged it when he found out the government knew about it.  Mattson's
13 motion mischaracterizes WITNESS-1's interest in the property and makes false statements about his
14 payments.  *See* U.S. Opp. to Def.'s Second Mot. to Modify Pre-Trial Asset Restraint, ECF No. 73, at
15 PageID 16–17.  *Accord* Def. Mot. Ex. 2, ECF No. 89-2, at Page ID 4.  But the Court need not resolve
16 that dispute or characterize WITNESS-1's interest in the property.  What *is* relevant, and what cannot be
17 disputed from the record, is that Mattson hid the existence of WITNESS-1 and his ownership interest
18 from this Court, the District Judge, and the government.  The fact that Mattson repeatedly continues to
19 conceal from the Court the true nature of his assets means that conditions of release *must be* substantial,
20 including the posting of 210 La Salle, which, as the government has previously noted, is the only asset
21 with any substantial value. Moreover, the fact that 210 La Salle belongs to Mattson's wife—as opposed
22 to a sometimes-estranged relative by marriage—means that risking it provides him substantially greater
23 incentive to abide the conditions of release than the mere posting of the Reno property.

**V.    The Defendant's Comparisons to Other Defendants in this District Are Irrelevant and Inapposite.**

As described above, the defendant has already raised and the Court has already considered the issue of the circumstances of other defendants' bonds, and so this argument is insufficient to reopen the bond hearing.  And the fact that the Court set a different bond for a different defendant under different

circumstances is not "new information" that is relevant to the Court's bail determination in *this* case. Unlike the sentencing statute, the Bail Reform Act does not call for the Court to consider a survey of other defendants. *Cf.* 18 U.S.C. § 3553(a)(6) *with* 18 U.S.C. § 3142.  And in any case, the government, too, can find several cases in which a fraud defendant was required to post substantial secured bonds, in greater amounts than the Court required here. *See, e.g., United States v. Lachwani*, No. 3:21-cr-00353; *United States v. Lynch*, No. 3:18-cr-00577.  And a few weeks ago, the Court released another fraud defendant over the government's objection who promptly fled. *See United States v. Liu*, No. 3:25-cr-259.  It is not helpful to look to the circumstances of other cases without considering *all* of their circumstances. Rather, the Court must make an individualized determination to determine what conditions will "reasonably assure" the defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(c).

The question is not whether the defendant's release should be secured by one property or two: it is whether that property is sufficient to reasonably assure his appearance as required and the economic safety of the community.  Under these circumstances, SURETY 1's property—which according to the defendant is worth just $600,000—is patently insufficient to secure a $4 million bond under the circumstances here.  Moreover, the nature of the cases cited by the defendant—and the frauds therein—are wholly different than this case.  The defendant cites to cases in which the gravamen of the fraud was a startup founder misleading a sophisticated venture capitalist about the financials of their firm, usually in an arms-length business transaction.  That is a wholly different kind of fraud than that alleged here—where Mattson maintained decades-long relationships with elderly, vulnerable individuals and constantly lied to them via the telephone, text message, e-mail, and in person at their kitchen tables. That is relevant because it goes to the defendant's calculus: he is more likely to be the type to take advantage of people who put their trust in him.

And there are other differences between this case and Hudson, the case on which the defendant principally relies.  Def. Mot. at 6.  Hudson consented to an interview with Pretrial Services about his finances, which revealed that he was nearly $5 million in debt and had no assets; Mattson refused to even discuss his finances with pretrial services, and in subsequent months has misrepresented them to the Court through his declarations to the district judge. Unlike Mattson, there is no indication that

1  Hudson was associated with properties worth nearly $35 million, associated with 64 addresses, or
2  associated with the sales of properties totaling more than $52 million.  *See* Bail Study, ECF No. 15, at 9.
3  Mattson is a wholly different case than Hudson.
4      Finally, the defendant's contention that he has abided by some of the conditions of his release for
5  four months is not persuasive.  "Case law abounds that a defendant's compliance with the current
6  conditions of pretrial release is not in and of itself grounds to modify those conditions."  *Ebonka*, 733
7  F.Supp.3d at 969.  Second, the "defendant's wife" being his custodian is also unpersuasive, given her
8  involvement in hiding assets from the authorities and her scheme with SURETY 1 to hide her own
9  assets.

## CONCLUSION

11      The defendant has not met his preliminary burden of showing changed circumstances to justify a
12  reopening of the detention hearing.  The Court can and should deny his motion on that basis alone.
13  Moreover, the defendant's Sixth Amendment argument is also unavailing because, according to him, he
14  has no interest in the property at 210 LaSalle and therefore cannot claim that its posting implicates his
15  Sixth Amendment rights.  Finally, information and evidence obtained subsequent to the bail hearings has
16  raised additional concerns about the defendant's conduct while on release and the conditions necessary
17  to adequately assure his appearance and the safety of the community.
18      For all these reasons, the Court should deny the motion and continue to require the posting of
19  210 La Salle to secure the defendant's release on bond.

20  DATED: September 30, 2025                Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney
*/s/ Nikhil Bhagat*

NIKHIL BHAGAT
Assistant United States Attorney