**Pages 1 - 23**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
VS. ) **NO. 4:25-CR-00126-JST-1**
)
KENNETH W. MATTSON, )
)
Defendant. )
)

Oakland, California
Friday, January 16, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
CRAIG H. MISSAKIAN
United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102
**BY: NIKHIL BHAGAT**
**ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
RANDY SUE POLLOCK
286 Santa Clara Avenue
Oakland, CA 94610
**BY: RANDY SUE POLLOCK**
**ATTORNEY AT LAW**

Reported Remotely By: Stephen W. Franklin, RMR, CRR, CPE
Official United States Reporter

**Friday - January 16, 2026** **10:19 a.m.**

**P R O C E E D I N G S**

---o0o---

(Defendant present, out of custody.)

**THE COURTROOM DEPUTY:** Calling criminal case number 25-126-JST-1, United States of America versus Kenneth Mattson. Parties please state your appearances beginning with the government.

**MR. BHAGAT:** Good morning, Your Honor. Nikhil Bhagat for the United States.

**MS. POLLOCK:** Good morning, Your Honor. Randy Sue Pollock appearing with Mr. Mattson, who is present.

**THE COURT:** Good morning.

**PROBATION OFFICER:** Good morning, Your Honor. Amaryllis Austin from U.S. Pretrial Services.

**THE COURT:** Good morning.

Well, the matter is again on calendar for defendant's motion to modify bond. When the case was last before the Court a week ago the defendant requested that the Court order, and the Court did order, Pretrial Services to prepare an updated Pretrial Services report, which I received yesterday, and I'm assuming the parties also received it. And so I will, first of all -- just a second, sorry.

Ms. Austin, anything to add to what's in the report?

**PROBATION OFFICER:** No, Your Honor.

**THE COURT:** All right. Ms. Pollock, it's your motion. You have the microphone.

**MS. POLLOCK:** Yes, Your Honor.

This morning there was some confusion that I discussed with Pretrial and the government, because in the report it says that the bond reflects a $4 million partially secured bond secured by 200,000 and the two properties. I'm sorry, the sentence after that. I'm on page 2 of the report, the third paragraph, Your Honor, that he was only required to partially secure the 4 million with approximately 2 million in combined properties and cash.

**THE COURT:** Yes.

**MS. POLLOCK:** I was confused by that, because it had always been my understanding that it was to be fully secured by both pieces of property for the amount of either it was three-nine or 4 million, and Pretrial looked at the transcript of the hearing, and it is supposed to be fully secured. So it's not 2 million. My request in bringing this motion was to reduce the amount of the actual security so that it would be what is reflected in the pretrial report.

The two pieces of property, the one on -- in Reno is fully paid off, and its appraisal is approximately $800,000. The Piedmont property, Zillow posts it, has it at $3 million, but as I've explained in prior pleadings, that low amount is because the backyard is in Oakland, but the property is -- on a

Piedmont value it's approximately $5 million. There is approximately $1.3 million first to Chase. So as I estimated, the actual amount that is posted with the Court is 3.7 for the LaSalle property and 800 for the Reno property. So the total is 3.7 that I come up with.

**THE COURT:** Okay. Let me rewind this a little bit. None of this is in the papers, right?

**MS. POLLOCK:** No.

**THE COURT:** Okay.

**MS. POLLOCK:** No, and I --

**THE COURT:** So bear with me.

**MS. POLLOCK:** Sure.

**THE COURT:** Because I'm getting this for the first time.

**MS. POLLOCK:** Sure, yes.

**THE COURT:** There are two properties. You've indicated there are two properties that have been posted in support of this bond, right?

**MS. POLLOCK:** Correct.

**THE COURT:** The first one is where? What's it called? Just give it a name.

**MS. POLLOCK:** Reno.

**THE COURT:** Reno.

**MS. POLLOCK:** Reno, Nevada.

**THE COURT:** Okay. And that property is worth how

much?

**MS. POLLOCK:** 800,000. It's owned free and clear.

**THE COURT:** Is there any dispute about the value of that property, or if I asked anybody connected to this case would they say, oh, okay, yeah, the Reno property, that's worth 800,000? You understand what I'm saying?

**MS. POLLOCK:** I understand.

The government may say 600,000.

**THE COURT:** Okay. What's the evidence of its value?

**MS. POLLOCK:** It would be Zillow and what the owner has told me.

**THE COURT:** Okay. Is the other property the LaSalle property?

**MS. POLLOCK:** Yes, Your Honor.

**THE COURT:** And Zillow says it's 3 million?

**MS. POLLOCK:** Correct.

**THE COURT:** But you don't think that's correct?

**MS. POLLOCK:** No, based on I've spoken to a realtor, a Piedmont realtor. I know where the house is. I know 3 million for a six-bedroom, five-bathroom home on LaSalle is not worth 3 million.

**THE COURT:** Okay.

**MS. POLLOCK:** So, and I know that the first is approximately --

**THE COURT:** You're not asking me to find this morning

that the LaSalle property is worth a particular amount, are you?

**MS. POLLOCK:** No.

**THE COURT:** Okay.

**MS. POLLOCK:** You -- yeah, you can't. But what I'm asking is the total -- the amount to be secured by the $4 million bond be reduced to 2 million.

**THE COURT:** I see.

All right. Ms. Austin, you heard what Ms. Pollock said about the Pretrial Services report, right?

**PROBATION OFFICER:** Yes, Your Honor.

**THE COURT:** Is it in fact -- so when I read this report I focused on two sentences. One of them says: "Given the factors noted below, Pretrial Services believes the defendant does pose a risk of nonappearance that may be reasonably mitigated by a combination of release conditions currently imposed," that's on page 2. And then on page 3 there's a similar sentence with regard to the defendant posing a financial danger to the community.

So my question for Pretrial Services is: Is it your position that the, quote, combination of release conditions currently imposed, closed quote, does that refer to the conditions that were actually imposed as described in the transcript Ms. Pollock mentioned, or is that the conditions that are laid out in this updated report in the section called

Review of Party's Motions?

**PROBATION OFFICER:** Your Honor, it would be based on the original conditions of release on the bond. Agreeing with everything defense counsel has said, except with additional clarification on our part, our recommendation was that the total bond be 4 million secured by the two properties, and so with whatever amount of equity was in those properties. It was unclear at the time of the bond what that amount was, with remainder being unsecured. So we continue to believe that's appropriate.

**THE COURT:** Okay. So that's -- okay. That's a little different than -- it sounds like -- I haven't -- I'd have to go back and look at the transcript. Anyway, I think I understand. Secured by the Reno property and the LaSalle property, and if there's any gap between the value in those properties and the amount of $4 million, that would be unsecured?

**PROBATION OFFICER:** Correct. And I do have the relevant pages of the transcript that I've shown to defense counsel and now the government.

**THE COURT:** Can you just give me the date of that transcript so I can go back and read it in chambers?

**PROBATION OFFICER:** Yes, May 28th, 2025, and it's on page 185 of the transcript, Your Honor.

**THE COURT:** Okay. That's helpful clarification to

this updated report.

All right. Ms. Pollock, further argument?

**MS. POLLOCK:** Nothing further, Your Honor.

**THE COURT:** Mr. Bhagat?

**MR. BHAGAT:** Your Honor, just on the piece that Ms. Pollock raised this morning, we do have some disagreement as to the value of those properties, but I think it was everyone's understanding that the bond would be $4 million and that these two properties would be posted along with the cash, and the term "partially secured" means that the value, the equity in those properties does not reach 4 million. It's something less than 4 million.

**THE COURT:** Yes. So I'm just trying to understand. This is being presented to me on a pop quiz basis. I thought I was ready for today's hearing, but I'm getting some new information. So my question is: What is the gap between the parties' positions this morning?

**MR. BHAGAT:** So as to Reno, we have accepted the defense's representation in court before the magistrate judge, which is that that property was worth $680,000 free and clear.

**THE COURT:** Okay.

**MR. BHAGAT:** As to LaSalle, we've put in our papers that we believe that Mr. Mattson or Mrs. Mattson's equity interest is approximately 1.3 million, accounting for the first mortgage, the $1 million first mortgage, as well as the tenant

who has the one-third interest. I say all that, and so our view is that that's his equity, and that is about 1.3 million.

I saw all that, I say all that, but I don't think any of this is necessarily relevant to what's before Your Honor today. It is everyone's understanding that it was going to be secured up to the amount of the equity in those properties. Whether that equity is 1.3 million in LaSalle, as we say, or if it's 2 million, as they say, it's still combined less than the total amount of the $4 million.

**THE COURT:** All right. And what -- I didn't realize that I was going to have to get into the weeds today, so all I brought with me were the notes for what was likely to be an oral ruling from the bench on the parties' motions, and then I have this updated Pretrial Services report. So I don't have everything in front of me I need, but let me make a stab at it anyway.

In the Pretrial Services report it says the original bond reflects a $4 million partially secured bond secured by $200,000 cash and secured by two properties. And as I'm understanding you, Mr. Bhagat, that meant that these two properties, Reno and LaSalle, would be posted. In addition to that, there would be $200,000 in cash. There was an understanding that even with that cash we're probably not at 4 million.

**MR. BHAGAT:** Correct.

**THE COURT:** But those were the conditions of the bond.

And then according to this Pretrial Services report, a hundred thousand dollars of the cash was posted and a hundred thousand dollars was not.

**MR. BHAGAT:** Yes, Your Honor.

**THE COURT:** Ms. Pollock, what relief are you asking from me?

**MS. POLLOCK:** Well, Your Honor, in the next paragraph where it says that it's -- Pretrial says it's a $4 million bond with approximately 2 million in combined properties and cash, the government and I do not agree on the total amount of what the equity would be. I believe it's 3.7, but it's actually --

**THE COURT:** You believe the properties are -- this is a dispute over the value of the underlying properties.

**MS. POLLOCK:** Correct. And I believe we are very close to that 4 million fully secured amount.

**THE COURT:** Am I wrong in saying that's not the relief your motion asked for? You didn't ask the Court to determine that the properties were worth one thing and not another, did you?

**MS. POLLOCK:** I asked -- no. I asked that the bond be reduced from the 4 million. And so the change I guess what I'm asking today is the properties are deeded, the bond is at 4 million. Either to reduce the amount of the bond to

2 million total secured by these two properties. Basically that is what I'm asking.

**THE COURT:** According to you, you're north of four anyway.

**MS. POLLOCK:** I believe we are. Well, roughly.

**THE COURT:** I'm really confused by this.

**MS. POLLOCK:** Well ...

**THE COURT:** Because you're asking me to reduce -- you're telling -- let me back up.

Is your client trying to not have to post the -- one of the two properties?

**MS. POLLOCK:** They're deeded to the Court.

**THE COURT:** Okay.

**MS. POLLOCK:** They were.

So the amount of the -- and ...

**THE COURT:** And did the Court -- so Mr. Bhagat has said as far as he's concerned those two properties, he understands there's going to be a gap, they're not going to reach 4 million, and is that -- Mr. Bhagat, is that what the magistrate judge said, too?

**MR. BHAGAT:** Yes, Your Honor.

**THE COURT:** Okay. So what's the problem? Is he trying -- is Mr. Mattson trying not to have to post the additional hundred thousand, or what's the issue? You just told me that you believe very strongly that these properties

are worth more than $4 million. I just don't get it. What am I missing?

**MS. POLLOCK:** What I'm asking is that the properties are deeded, that it be secured by a lesser amount, that the bond be reduced to being secured by only 2 million.

**THE COURT:** Why?

**MS. POLLOCK:** Because there are expenses that -- deeds of trust that would be posted on that property to draw money out.

**THE COURT:** Oh, I get it.

**MS. POLLOCK:** For legal issues, Your Honor. And I don't ... yes.

**THE COURT:** Okay. Ms. Austin, you following all this?

**PROBATION OFFICER:** I believe I have a similar understanding to Your Honor, and I've spoken to defense counsel this morning.

**THE COURT:** Okay. Ms. Pollock will correct me if I'm wrong, but I think that the issue before the Court is, as she describes, she wants the Court to order that the amount of the bond be reduced from 4 million to 2 million, period, and she's not asking me to determine that a property has or doesn't have any particular value, she just wants to reduce the amount of the bond. My reading of your updated report is you do not agree with that request. Is that true?

**PROBATION OFFICER:** We do continue to believe -- I think part of the reason we agreed that the original bond is more appropriate is simply because we don't have any financial information. So it's hard for us to determine what may or may not be an appropriate bond amount without the financial information that we would typically have in a case like this. So we're just going off the representations of everybody. That said, it's more important to us, we believe, in mitigating any potential risk, that the properties be posted, which they are.

**THE COURT:** Yes.

I am being asked by the defendant to reduce the bond amount from 4 million to $2 million. Does Pretrial Services support that request, or oppose it or take no position?

**PROBATION OFFICER:** I would take no position given the limited information that we have.

**THE COURT:** In your --

**PROBATION OFFICER:** I will say he's been fully compliant with conditions of release, and as long as the two homes remain secured that would seem appropriate.

**THE COURT:** I see.

What if the value of the Court's collateral was reduced by the defendant taking money out of those properties even though they've been posted to the Court? How would Pretrial Services feel about that?

**PROBATION OFFICER:** Again, Your Honor, we have such

limited information, and we would not be able to track those expenditures or withdrawals, which I think is part of the concern is there's a representation that the funds would be drawn down to pay for legal expenses, and that seems perfectly reasonable under the circumstances, but we would have no way of knowing if that was in fact what the funds were being used for.

**MS. POLLOCK:** Your Honor.

**THE COURT:** Yes.

**MS. POLLOCK:** May I note, the Reno property is owned by Mr. Mattson's sister-in-law and brother-in-law. The LaSalle property is owned by Mr. Mattson's wife. It is not an asset of Mr. Mattson's, just to clarify.

**THE COURT:** Okay. All right. Ms. Pollock, further argument?

**MS. POLLOCK:** Would it assist the Court if I filed a supplemental memorandum explaining this rather than -- what do you think, Your Honor?

**THE COURT:** I don't mean to be facetious in what I'm about to say. This is the way motion practice normally works. A party wants relief from the Court files a motion. If they think the other side might agree to the relief, then they go ask the other side to stipulate. Let's say that the other side doesn't agree, so a party files a motion and then the other side files an opposition. There might be a reply brief, there might not, it depends. All of this happens well in advance of

the hearing date.

When the hearing date arrives the Court has read all the parties' papers, and then the Court takes argument from the parties and the arguments are limited to arguments and evidence and facts and things that were contained in the papers. There are no surprises. It's just a chance for the parties, for the lawyers to make a verbal presentation that sometimes adds to what they've said in writing. That's not what's happening here. So I'm a little on my back foot a little bit, but that's fine.

I don't think I need more paper. I just want to make sure that I've given the parties a chance to make whatever arguments they want in support of the motion.

**MS. POLLOCK:** Very well.

**THE COURT:** You have the microphone again.

**MS. POLLOCK:** So, you know, I'll submit it, Your Honor.

**THE COURT:** Mr. Bhagat?

**MR. BHAGAT:** Your Honor, just as to the legal expenses, we've had three rounds of briefing on the legal expenses. I think that horse has been pretty well beat. I don't think legal expenses is a factor under the Bail Reform Act, which is what the Court is tasked with considering in the current procedural posture.

We were here last week. Your Honor granted Ms. Pollock's

request to come back after there was a new Pretrial Services report, and I think Your Honor said then that it would be helpful to the Court to know if Pretrial had changed its recommendation, and I think what you also said is that it would be helpful to you to know if Pretrial had not changed the recommendation, and we've now seen that Pretrial has not changed the recommendation. They're asking for the $4 million bond. For the reasons that we set forth in our papers and in our argument last week we think that's appropriate, and we certainly don't think it violates Mr. Mattson's Eighth Amendment rights. And so for that reason we'd ask the Court to deny the motion today.

**THE COURT:** Ms. Pollock, you can have the last word if you want.

**MS. POLLOCK:** It's fine, Your Honor. Submitted.

**THE COURT:** The Court will now rule on the motion. There won't be a written order, and any party requesting the Court's ruling can order a transcript of the proceedings.

The motion before the Court was described by the defendant as an appeal of the magistrate judge's bail decision. The Court will construe the motion as a motion for amendment of defendant's conditions of release pursuant to Title 18, United States Code, Section 3145. I apply a de novo standard of review, which means that I review the evidence before the magistrate judge and make my own independent determination

regarding whether the magistrate judge's findings are correct without giving any deference to that decision. That's what the Ninth Circuit has instructed in a case called *United States versus Koenig*. Mr. Reporter, K-o-e-n-i-g, 912 F.2d 1190, at 1192 and 1193.

Having considered the parties' arguments, as well as the entire record, including the updated Pretrial Services report, the Court will deny defendant's motion.

The magistrate judge ordered defendant released with certain conditions, including a $4 million bond secured by the posting of $200,000 in cash and two properties, one in Reno, Nevada, owned by defendant's sister-in-law and her husband, and the other in Piedmont, California, owned by Mr. Mattson's wife.

The issue presented by the motion was whether the posting of the Piedmont property should be required. That request was modified today on the fly to request that the Court simply reduce the amount of the bond, but for purposes of today's proceedings the difference between those requests is not material.

The defendant previously raised concerns about the posting of the LaSalle property, but in his earlier motion he argued only that doing so would violate his Sixth Amendment rights. This Court rejected that argument, and the magistrate judge subsequently denied defendant's request to remove posting of that property as a condition of pretrial release.

Under Title 18, United States Code, Section 3142(g), the purpose of setting conditions for pretrial release is to, quote, reasonably assure the appearance of the person as required and the safety of any other person in the community, closed quote. Courts should consider the nature and circumstances of the offense, the weight of the evidence against the person, the history and characteristics of the person and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Here the charges against Mr. Mattson are extensive and there appears to be substantial evidence against him as detailed in the government's opposition to the current motion. Defendant has been charged with a long-running scheme to defraud individuals by falsely representing that they were investing in real property, when in fact they never held any actual interest in those properties. Multiple alleged victims have come forward, and the government has described evidence of obstructing justice and defendant's attempts to dissipate assets, including after he became aware of the government's investigation and pending FBI raid on his residence.

The Court cannot and does not presume defendant's guilt, but as the Ninth Circuit explained in the *United States versus Motamedi* -- Mr. Reporter, M-o-t-a-m-e-d-i, 767 F.2d 1403 at 1408, the Court considers the nature of the offense and

evidence of guilt, quote, in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community.

The conduct at issue in this case unquestionably poses a danger to the community. Defendant is alleged to have defrauded individual investors, often senior citizens, and typically through face-to-face meetings and after building a relationship of trust of tens of millions of dollars. While he is on release, the danger of continued economic harm continues to exist.

Although defendant is subject to other conditions of release aimed at preventing him from engaging in financial transactions, the Court concludes that the posting of 210 LaSalle, a property titled in defendant's wife's name, or in the alternative, to reflect the defendant's new request made today, leaving the required bond at the amount of $4 million will help the moral suasion to mitigate the risk of danger to the community.

The Court reaches the same conclusion as to defendant's risk of flight. Contrary to defendant's assertions, the Court finds that defendant does pose a risk of flight. Although assets titled in defendant's name are currently unavailable to him because of ongoing bankruptcy proceedings, it is not clear the extent to which defendant might have access to other assets from family members or friends.

Also, although it is Mr. Mattson's right not to provide the financial information that Pretrial Services has asked for, I will note we simply don't have that information.

In addition, the substantial amount of time in custody defendant faces if he were to be convicted provides some motive to flee.

None of the assets required to be posted as security for defendant's bond are defendant's own assets. Consequently, as the magistrate judge aptly explained, the purpose of requiring multiple people to post security for the bond and to post security in the full amount of the properties posted is to provide moral suasion that defendant complied with his conditions of release. 210 LaSalle is the only security owned by the defendant's wife. The other securities were posted by his sister-in-law and a friend. The Court does not find the security posted by the latter two individuals to be sufficient to reasonably assure defendant's personal appearance or the safety of the community, nor would the Court find those conditions to be met if the Court were to reduce the amount of the bond.

Nor does the Court find defendant's compliance with the conditions of release to date to be grounds for reducing the amount of his bail. The whole point of setting conditions of release is for defendant to comply with them. That he has done so for a few months and well before any trial date has been set

is not evidence that he would not violate the conditions if the amount of bail were reduced or as the case proceeds closer to trial. This remains true even though defendant has made all required appearances, despite not posting 210 LaSalle until last month, after the Court denied his third motion regarding whether posting the property would violate his Sixth Amendment rights.

Although defendant has pointed to other cases in this district where defendants facing fraud charges were required to post lower amounts of security, the government has identified cases pointing in the other direction. Ultimately the Court does not find these comparisons to be helpful because, as the parties do not dispute, determining whether to detain a defendant or other what conditions to release the defendant requires an individualized analysis.

Finally, the Court considers the input of the Pretrial Services office. At defendant's request, the Court asked Pretrial Services to prepare an updated Pretrial Service report which the Court received yesterday. The report states Pretrial Services' belief that, quote, the defendant does pose a risk of nonappearance that may be reasonably mitigated by a combination of release conditions currently imposed, closed quote, and its belief that, quote, the defendant poses a financial danger to the community which may be reasonably mitigated by a combination of release conditions currently imposed, closed

quote. This evidence provides further support for the denial of defendant's motion.

For the reasons I've just stated, the Court concludes that the posting of 210 LaSalle or -- and/or the maintenance of the bond in the amount of $4 million are necessary conditions to reasonably assure defendant's appearance and prevent danger to the community. Defendant's motion to amend his conditions of release is therefore denied.

That concludes the Court's ruling.

Ms. Shoblo, is there a next date in this case?

**MS. POLLOCK:** Your Honor, the next date is next Friday, and the government and I have talked about continuing that until March. I have the date.

**MR. BHAGAT:** We discussed the 20th, Your Honor.

**THE COURT:** Well, you've both been sitting in the audience this morning. You know that March 20th will be a jampacked date, but that's fine. I can always accommodate another status conference.

The Court will continue this to March the 20th, 2026, at 9:30 a.m. I'll order Mr. Mattson to be personally present. I'll exclude time until then for the effective preparation of counsel.

Thank you.

**MS. POLLOCK:** Thank you.

**MR. BHAGAT:** Thank you, Your Honor.

**PROBATION OFFICER:** Thank you, Your Honor.

(Proceedings concluded at 10:49 a.m.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, March 2, 2026



Stephen W. Franklin, RMR, CRR
Official Reporter, U.S. District Court